UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIMIKIA T.,

            Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

_____

**DECISION AND ORDER**

23-CV-184S

      1.      Plaintiff Timikia T.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed her application with the Social Security Administration on November 16, 2018.  Plaintiff's alleged disability beginning June 6, 2016, due to fibromyalgia, carpal tunnel syndrome, anxiety disorder, major depressive disorder, post-traumatic stress disorder, migraine headaches, and asthma.  Plaintiff's application was denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

      3.      On June 25, 2021, ALJ Kenneth Theurer held an online video hearing due to the COVID-19 pandemic at which Plaintiff was represented by counsel and Vocational

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

Expert Joseph Atkinson appeared and testified.  (R.[2] at 33-79, 15.)  At the time of the hearing, Plaintiff was a 39-year-old woman with a high school education and past relevant work as a teacher's aide.  (R. at 26.)

4.      The ALJ considered the case *de novo* and, on July 14, 2021, issued a written decision denying Plaintiff's application for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 9, 11.)  Plaintiff filed her Reply on October 10, 2023 (Docket No. 15), at which time this Court took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion will be denied and Defendant's Motion will be granted.

6.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's July 14, 2021, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. § 404.1520.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

9.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based

solely on medical evidence, the claimant has an impairment
which is listed in Appendix 1 of the regulations.  If the claimant
has such an impairment, the [Commissioner] will consider
[her] disabled without considering vocational factors such as
age, education, and work experience; the [Commissioner]
presumes that a claimant who is afflicted with a "listed"
impairment is unable to perform substantial gainful activity.
Assuming the claimant does not have a listed impairment, the
fourth inquiry is whether, despite the claimant's severe
impairment, [s]he has the residual functional capacity to
perform [her] past work.  Finally, if the claimant is unable to
perform [her] past work, the [Commissioner] then determines
whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.     At Step Two, an impairment is deemed severe if the impairment significantly

limits a claimant's ability to perform basic work activities.  An impairment or combination

of impairments found to be "not severe" when medical evidence establishes only a slight

abnormality or a combination of slight abnormalities which would have no more than a

minimal effect on an individual's ability to work, SSR 85-28, 1985 SSR LEXIS 19 (1985);

20 C.F.R. § 404.1522.  (R. at 16.)  Claimant bears the burden of establishing that she has

a severe impairment, "which is 'any impairment or combination of impairments which

significantly limits [the claimant's] ability to do basic work,'" Miller v. Berryhill,

No. 16CV6467, 2017 U.S. Dist. LEXIS 153578, at *20 (W.D.N.Y. Sept. 20, 2017); see

20 C.F.R. § 404.1520(c).

11.     In this Circuit, this Step Two severity analysis "may do no more than screen

out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).  Despite this

level of screening at Step Two, claimant still has the burden to show that her impairments

or combination of impairments significantly limited her ability to perform work.

12.     Although the claimant has the burden of proof at the first four steps, the Commissioner has the burden of proof at the fifth and final step.  See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.   First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.   See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

13.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 23, 2016.  (R. at 17.)  At Step Two, the ALJ found that Plaintiff has the following severe impairments:  fibromyalgia, carpal tunnel syndrome, anxiety disorder, major depressive disorder, and post-traumatic stress disorder.  (R. at 18.)  The ALJ, however, deemed that her claimed migraine headaches and asthma were nonsevere (R. at 18).  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.)

14.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with additional limitations.  The ALJ determined that Plaintiff could occasionally lift and carry 20 pounds, while frequently lift and carry 10 pounds; sit for up to 6 hours.   The ALJ also determined that Plaintiff could stand or walk for approximately 6 hours in 8-hour workday with normal breaks.  The ALJ also found that

Plaintiff could occasionally climb ramps, stairs, ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, or crawl.  Further, the ALJ found Plaintiff also could frequently handle, finger, or feel bilaterally.  The ALJ also determined that Plaintiff could perform work limited to simple, routine, and repetitive tasks, in a work environment free of fast paced production requirements and involving only simple, work-related decisions with few, if any, workplace changes.  (R. at 20-21.)

15.    At Step Four, the ALJ found that Plaintiff was unable to perform her past relevant work as a teacher's aide.  (R. at 26.)  At Step Five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 26-27.)  The ALJ posed hypotheticals to the Vocational Expert of a claimant with the same age, education, work experience, and RFC as Plaintiff, and the Expert opined that this claimant could perform such work as a clerk, office helper, and photocopy machine operator.  (R. at 27.)  Accordingly, the ALJ found that Plaintiff was not disabled. (R. at 27.)

16.    Plaintiff argues that the RFC is not supported by substantial evidence because at Step Two the ALJ did not deem severe her migraine headaches.  Despite Plaintiff's burden of proof at this Step, this Court finds that her migraine headaches singly or in combination with other ailments did not significantly limit Plaintiff's ability to work to be deemed severe impairments.  The ALJ aptly found the screened-out claims arising therefrom because he had substantial evidence that each condition did not limit Plaintiff's ability to work and thus were not severe impairments.

17.     As for the severity of her migraine headaches, the diagnosis of that condition without more does not establish the level of its severity.  See Monette v. Colvin, 654 F. App'x 516, 519 (2d Cir. 2016).

18.     The Social Security Ruling for primary headache disorders requires a claimant prove the condition by objective medical evidence and not merely from her statement of symptoms, a diagnosis, or a medical opinion, SSR 19-4p, 2019 WL 4169635, at *2 (2019); 20 C.F.R. §§ 404.1502(f), 404.1521.

19.     Although courts in the Second Circuit acknowledge the absence of an objective test for diagnosing migraines, see, e.g., Ramona R. v. Saul, No. 19-CV-1630F, 2021 WL 732694, at *4 (W.D.N.Y. Feb. 25, 2021) (citing cases), that is of no moment here.  The ALJ accepted the diagnosis of headaches, noting Plaintiff's testimony and her subjective complaints as to the frequency of her headaches.  (R. at 18, 53.)  Rather, at issue here are the severity of Plaintiff's headaches, whether she was impaired by her migraines, and whether she successfully treated it to moderate its severity.  (R. at 18.)  The ALJ further found that Plaintiff failed to establish primary headaches disorder.  (Id.)

20.     This Court reviewed the medical record and finds there is no evidence of a severe impairment arising from Plaintiff's migraines.

21.     From the beginning of disability on June 6, 2016, through July 2018, Plaintiff had not sought treatment for migraines.  On May 3, 2017, Plaintiff complained of occasional shooting pain up her back that caused headaches (R. at 1382).

22.     In July 2018, Plaintiff reported that she never sought treatment for migraines.  (R. at 2427.)

23.     In August and September 2018, she reported her migraines during examinations but she still occasionally denied the condition.  (R. at 2355, 4735.)  Christina Sande, FNP for Heidi Zinkand, M.D., and Emily Dicesare, D.O., however, each found that Plaintiff was negative for headaches.  (R. at 2355, 4735.)

24.     On November 1, 2019, Plaintiff complained of chronic headaches both from migraines and concussions from domestic violence.  (R. at 4659.)

25.     In May 2020, doctors performed a CT scan on Plaintiff's head and found no acute intracranial findings.  (R. at 5308.)  In June 2020, doctors prescribed Imitrex for migraines and by August 2020 her headaches were stable.  (R. at 5086, 5082, 5074.)

26.     This medical record shows limited but effective treatment of Plaintiff's migraines.  This record does not contain objective medical evidence that her headaches significantly limited her ability to perform work activities.   The ALJ was correct in concluding, based on the present medical record, that Plaintiff's migraines were not a severe impairment.

27.     This Court concludes that this present record provides substantial evidence to support the ALJ's finding as to the severity of Plaintiff's migraines.  Thus, Plaintiff's Motion for Judgment on the Pleadings on this ground is denied.

28.     Plaintiff next argues that the ALJ failed to consider the side effects of her migraine medication, concluding that the ALJ disregarded this evidence.

29.     She bases this contention solely upon her hearing testimony wherein she claimed side effects and questioned the effectiveness of her migraine medication. Plaintiff testified that if anyone takes a lot of medicines there are side effects which mimics some of the things she did.   Plaintiff complained that her migraine medication took time

to work.  (R. at 53.)  She stated that she suffered additional pain taking that medication.  Plaintiff then testified that she needed to lie down with covers over her head to block light during migraine episodes.  (Id.)

30.     On June 29, 2020, Dr. Zinkand prescribed Imitrex to Plaintiff for her migraines and Plaintiff reported that this medication worked very well.  (R. at 5074, 5082-83.)  She did not complain to her treating sources of any side effects therefrom but on July 20, 2020, complained that Imitrex was not effective against a sinus-induced headache.  (R. at 5074, 5078, 5082.)

31.     Plaintiff's medical record also did not contain any notation of side effects from Imitrex or how that drug interacts with Plaintiff's other medications.  There also was no objective medical evidence of the ineffectiveness of the medication; on the contrary, the record demonstrates that Imitrex stabilized Plaintiff's headaches.  (R. at 5074, 5078.)

32.     Accordingly, this Court concludes that Plaintiff has not shown any side effects from her migraine medication, the ineffectiveness of her medication, or any limitations arising therefrom.  Therefore, Plaintiff's Motion for Judgment on the Pleadings is denied on this ground.

33.     Plaintiff next argues that the ALJ erred in not deeming severe her asthma.  The medical record here reveals that Plaintiff had asthma from her childhood and in May 2016 reported that it was poorly controlled.  Her asthma then improved when she obtained treatment in 2018 and was subsequently controlled by medication.  (R. at 1527, 1528, 1684, 3133, 4322, 4338, 4661, 5074.)  Treatment notes reveal that Plaintiff was prescribed Albuterol and Symbicort for her asthma and that it was well-controlled with this medication.  (R. at 1529, 1684, 3133, 4461, 5074.)

34.     Consultative examiner Harbinder Toor, M.D., examined Plaintiff on January 14, 2019.  (R. at 3055.)  Plaintiff then reported that she had asthma since 2000 but was never hospitalized for an asthma attack.  (Id.)  Dr. Toor, however, found her lungs were normal.  (R. at 3056.)  She stated such daily activities she could perform as cooking three days a week, cleaning, doing the laundry, shopping, and maintaining childcare as needed.  (Id.)  Among other physical ailments, Dr. Toor diagnosed her with a history of asthma.  (R. at 3056, 3057.)  The doctor opined that Plaintiff should avoid irritants which might precipitate asthma.  (R. at 3057.)

35.     The ALJ found Dr. Toor's opinion was from his one-time examination and was inconsistent with the medical evidence of record and Plaintiff's reported activities of daily living.  (R. at 24.)  Given what were termed "significant inconsistencies" in the doctor's findings on other ailments, the ALJ found this opinion was less persuasive.  (Id.)  Instead, the ALJ found persuasive the opinion of state agency evaluator, Aurelio Vinlaun, M.D., who concluded that Dr. Toor's opinion was "an overestimate of the severity of the individual's restrictions/limitations."  (R. at 24, 93.)  The ALJ determined that Dr. Vinlaun's opinion was consistent with the evidence.  (R. at 24.)

36.     Even with this conflicting evidence in the record as to the severity of her asthma, it is for the ALJ to resolve those conflicts, Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); see Perales, supra, 402 U.S. at 399, and not this Court on judicial review.

37.     The medical evidence shows that Plaintiff's asthma was only a slight abnormality that would have minimal effect on her ability to work.  (R. at 1528, 4661, 5074.)  The ALJ had substantial evidence to find that this ailment was not a severe

impairment at Step Two.  Therefore, Plaintiff's Motion for Judgment on the Pleadings regarding these nonsevere impairments is denied.

38.    Plaintiff next submits that the ALJ failed to incorporate limitations from her migraine headaches and asthma in the RFC.  This Court holds that the ALJ did consider her nonsevere asthma and migraines while formulating the RFC by finding that these impairments had no impact on Plaintiff's ability to work.  The ALJ appropriately found no limitation from her asthma or migraines to incorporate in her RFC.

39.    Under the regulations, the ALJ is required to consider all impairments, including those determined not to be severe.  20 C.F.R. § 404.1945(a)(2).  The RFC "must account for limitations imposed by both severe and nonsevere impairments."  Parker-Grose v. Astrue, 462 F. App'x 16, 18 (2d Cir. 2012).

40.    This Court finds that at Step Three in this case the ALJ considered Plaintiff's claimed asthma and migraines and concluded that each ailment was not a severe impairment and further found that these ailments presented no additional limitations.  (R. at 21.)

41.    The ALJ found that Plaintiff's allegations were not fully supported by diagnostic studies and clinical findings.  (R. at 21-22.)  For example, the ALJ reviewed her medical record and noted that Plaintiff also took topiramate from June 2020 for her migraines and that she reported her pain was better.  (R. at 23, 5074-75, 5082-83, 5086.)  As discussed above, the ALJ also considered medical opinions, finding more persuasive state agency opinions that criticized the limitations noted by consultative examiner Dr. Toor.  (R. at 24; see R. at 93.)  Further, the ALJ discussed Plaintiff's daily activities, such as childcare, cooking, and exercising, despite her migraines and asthma, concluding

that these activities showed "a greater functional ability than alleged by the claimant.' (R. at 23-24.)

42.     As found in <u>Sirris v. Commissioner</u>, this Court also finds that the ALJ did not err because his decision considered Plaintiff's non-severe impairments and "ultimately determined that [these impairments] did not warrant any additional limitations." <u>Sirris v. Comm'r</u>, No. 18-CV-1087-MJR, 2020 WL 5105110, at *9 (W.D.N.Y. Aug. 31, 2020). The ALJ thus correctly did not include any purported limitations from these conditions in the RFC.

43.     Furthermore as for her asthma, the jobs identified by the Vocational Expert at Step Five (clerk, officer helper, and photocopier operator) that a hypothetical claimant like Plaintiff could perform with her RFC did not require exposure to atmospheric conditions that affected the respiratory system. <u>See</u> SSA Program Operations Manual Sys. (POMS) DI 25001.001(A)(4). Therefore, Plaintiff's asthma had no impact on the jobs identified by the Vocational Expert and did not warrant any additional limitations in the RFC.

44.     Therefore, Plaintiff's Motion for Judgment on the Pleadings on this ground is denied.

45.     Plaintiff next argues that the ALJ inadequately evaluated the opinion of Agnes Jonas, Psy.D., who opined that Plaintiff had marked limitations in concentration. Plaintiff contends that the ALJ rendered an unclear assessment of that opinion while not stating how persuasive the opinion was.

46.     Under the Social Security regulations applicable for Plaintiff's post-March 27, 2017, Title II application, the Social Security Administration considers the

persuasiveness of a medical opinion.  <u>See</u> 20 C.F.R. § 404.1520c(a).  The agency does not defer or give any specific evidentiary weight to any medical opinion, <u>id.</u> § 404.1520c(a), but considers the supportability and consistency of the opinions as the most important factors in assessing their persuasiveness, <u>id.</u> § 404.1520c(c)(1), (2), (b)(2).  The ALJ must explain his approach with respect to supportability and consistency when considering a medical opinion.  <u>Melissa F. v. Comm'r</u>, No. 1:20-CV-1363 (WBC), 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021) (citing, for example, 20 C.F.R. § 404.1520c(b)).   The more relevant the objective medical evidence and supporting explanation presented by a medical source to support their medical opinion, the more persuasive that opinion would be.  20 C.F.R. § 404.1520c(c)(1).  The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive that opinion will be.  20 C.F.R. § 404.1520c(c)(2).

47.     Dr. Jonas examined Plaintiff on January 14, 2019, and opined that Plaintiff had moderate to marked limitations in understanding, remembering, or applying complex directions and instructions and marked limitation in sustaining concentration.  (R. at 3063, 3064-65.)

48.     Dr. Jonas noted that Plaintiff's difficulties were caused by lack of motivation and not her low-level functioning.  (R. at 3063, 3065.)  It appeared to the doctor that "if she in fact is functioning on such a low level as seen on the mental status evaluation, then it is very unlikely she is unable to take care of herself which does not appear to be the case." (R. at 3065.)  The doctor did observe that Plaintiff's mental status evaluations were not consistent with her vocational and educational history as a teacher's aide.  (R. at 3064.)  The doctor then found no evidence of limitations in Plaintiff's understanding

13

simple directions or interacting with supervisors, coworkers, and the public.  (R. at 3064-65.)

49.     After considering Plaintiff's therapy treatment notes from the University of Rochester Medical Center ("URMC") from March 2019, the ALJ found that Dr. Jonas' clinical findings were "not consistent with the mental status examinations and clinical findings of any of [Plaintiff's] treating providers." (R. at 25, citing R. at 1805, 1863, 2804, 3425-26, 4419, 5334-35, 5417.)  The ALJ nevertheless concluded that Dr. Jonas' findings were consistent with limiting Plaintiff to performing simple unskilled work.  (R. at 25.)

50.     This Court finds the ALJ's assessment of Dr. Jonas' opinion was proper where the ALJ discussed the consistency of the opinion with the doctor's examination findings and that opinion's consistency with the overall record.  (Id.)

51.     Furthermore, the ALJ determined the persuasiveness of Dr. Jonas' opinion by testing its consistency with URMC's treatment records of Plaintiff and her subjective complaints.  (Id.)  This Court concludes that the ALJ properly relied upon Plaintiff's URMC therapy notes which consistently found that she possessed the ability to concentrate within normal limits, thus giving reduced weight to Dr. Jonas' contrary opinion.  (R. at 1805, 1863, 2804, 3425-26, 4419, 5334-35, 5417.)

52.     The ALJ also established the persuasiveness of this opinion from Dr. Jonas' examination findings.  (Id.)

53.     Thus, Plaintiff's Motion for Judgment on the Pleadings on this point also is denied.

54.     Finally, Plaintiff claims that the ALJ failed to recognize that she would be off-task due to her headaches as manifested in her limitations in concentration.  She concludes that the ALJ erred in not mentioning this condition to the Vocational Expert.

55.     Claimant bears the burden proving a more restrictive RFC than was assessed by the ALJ.  Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018).

56.     A finding of marked limitation in concentration, however, does not automatically lead to the conclusion that Plaintiff would be off task.  Absent substantial evidence of a claimant being off task, a claim that an impairment in concentration leads to being off task is speculative.  See Lowry v. Comm'r, No. 1:15-CV-1553 (GTS/WBC), 2017 WL 1290685, at *4 (N.D.N.Y. Mar. 16, 2017); Swanson v. Comm'r, No. 1:18-CV-00870 EAW, 2020 WL 362928, at *5 (W.D.N.Y. Jan. 21, 2020).

57.     This Court holds that Plaintiff has not met her burden to prove a more restrictive RFC that she had an off-task limitation.

58.     The ALJ posed a hypothetical to the Vocational Expert about an employer's tolerance for an employee's off-task behavior.  Based upon the Expert's experience, he opined that an employer's acceptable rate of being off task was up to 10% of the workday in addition to scheduled breaks.  The ALJ then asked if "somebody could only frequently maintain attention and concentration for a simple task, would that then, in essence, eliminate competitive employment," where he defined "frequent" as being able to perform up to 2/3 of the time or being unable to perform 1/3 of the time.  The Expert answered that this would eliminate employment.  (R. at 69.)

59.     The above colloquy is the only suggestion during the hearing about Plaintiff being off task.  The Expert did not find that Plaintiff would be off task or how long during a workday that she would be off task.

60.     Plaintiff relies upon her testimony to show that she would be off task because of her inability to concentrate.  (R. at 60-61.)  Plaintiff further relies upon Dr. Zinkand's medical report from October 4, 2019, where Plaintiff identified her repeated head trauma that caused her headaches which lead to difficulty concentrating and retain new information.  (R. at 5098.)  She also points to Dr. Jonas' finding that she was impaired in her attention and concentration.  (R. at 3063-65.)

61.     This Court finds, however, that this record did not support an off-task limitation and "does not compel the conclusion that [claimant] would be off task to the extent that [she] could not perform [her] past work."  McAlister v. Kijakazi, No. 22-353, 2023 WL 3938977, at *2 (2d Cir. June 12, 2023).

62.     Plaintiff has not produced evidence that she would be off task or that her concentration limitation would cause her to be off task.  Additionally, no medical professional has opined that Plaintiff would require breaks or would be off task.

63.     Moreover, Plaintiff's counseling treatment notes also consistently found that her concentration was within normal limits.  (R. at 1805, 1863, 2804, 3425-26, 4419, 5334-35, 5417.)

64.     This Court also notes that Dr. Jonas found that Plaintiff had marked limitation in sustaining concentration but "there is no evidence of limitation sustaining ordinary routine and regular attendance at work," effectively dismissing Plaintiff being off task.  (R. at 3064.)  Dr. Jonas further observed that if Plaintiff functioned as seen in her

16

mental status evaluation "then it [was] very unlikely she [was] unable to take care of herself which does not appear to be the case." (R. at 3065.) Dr. Jonas also did not find when Plaintiff would be off task or for how long.

65.    Plaintiff merely suggested her claimed limitation from her testimony and subjective statements to a treating source declaring her very poor concentration and that she was unable to read a book or focus. (R. at 60-61, 5098.) It is speculative to conclude upon this evidence that Plaintiff would be off task. Even with these subjective complaints, she has not shown how she would be off task.

66.    More importantly, Plaintiff has not identified objective medical evidence showing that she had concentration issues or would be off task. Plaintiff cited one examination report to support her conclusion that her headaches caused her difficulty concentrating and retaining information in which Dr. Zinkand found that Plaintiff had normal affect and thought content. (R. at 5098-5101, 5100.) However, Dr. Zinkand did not find that Plaintiff would be off task during the examination. (R. at 5098-5101.)

67.    This Court concludes that the ALJ thus had substantial evidence to exclude any limitation for Plaintiff being off task. Plaintiff's Motion for Judgment on the Pleadings on this ground is denied.

68.    Accordingly, having reviewed the ALJ's decision and considering Plaintiff's arguments, this Court finds no error in the ALJ's determination. The ALJ had substantial evidence for finding that Plaintiff's migraines and asthma were not severe impairments and that these conditions did not warrant reference in Plaintiff's RFC. This record does not contain objective evidence of adverse side effects from Plaintiff's migraine medication. The ALJ also appropriately considered Dr. Jonas' opinion. Finally, Plaintiff fails to

produce evidence that she would be off task due to her ailments to incorporate that limitation in her RFC.   Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:      May 10, 2024
             Buffalo, New York

                                   s/William M. Skretny
                                WILLIAM M. SKRETNY
                               United States District Judge